ST. LOUIS & S. F. RY. CO. et al. v.
PANNILL.

(Court of Civil Appeals of Texas. Dallas. June 22, 1912.)

CARRIERS (§ 228*) — CARRIAGE OF STOCK — DAMAGES FOR INJURY—EVIDENCE.

In an action against carriers of live stock for damages for causing loss in the weight and condition of cattle in transportation, evidence *held* not to sustain award of damages made.

[Ed. Note.—For other cases, see Carriers Cent. Dig. §§ 957–960; Dec. Dig. § 228.*]

Appeal from Kaufman County Court; Thos. R. Bond, Judge.

Action by Mack Pannill against the St. Louis & San Francisco Railway Company and others. From a judgment for plaintiff, St. Louis & San Francisco Railway Company and Paris & Great Northern Railway Company appeal. Reformed and affirmed.

Andrews, Ball & Streetman, of Ft. Worth, and A. H. Dashiell and Wm. P. Dumas, both of Terrell, for appellants. A. U. Puckett, of Dallas, and H. M. Cosnahan, of Kaufman, for appellee.

RASBURY, J. Appellee sued appellant for damages for causing loss in the weight and condition of 32 head of cattle while transporting same from Kaufman, Tex., to St. Louis, Mo., resulting, it was alleged, from delay and rough handling. The jury award-

ed appellee $117.12 against St. Louis & San Francisco Railway Company, and $117.12 against Paris & Great Northern Railway Company, and returned a verdict for the Texas Midland Railroad, from which judgment the first named two have appealed.

Appellants' fifth and sixth assignments of error attack the verdict of the jury as excessive, and assert same is not sustained by the evidence. We think these assignments are well taken. The cattle were sold for appellee when they arrived at St. Louis by A. L. Keechler, salesman for Cassidy Southwestern Commission Company, who testified upon the trial of the case that he had been engaged in selling live stock for 25 years, and that he sold the stock involved in this transaction for appellee, and that they were badly knocked up and bruised and crippled and were in a gaunt and shrunken condition, and that he had great difficulty in selling them; and then proceeds: "There were four cows, weighing 3,250 pounds, sold for $3.24 per hundredweight, six cows and heifers, weighing 3,810 sold for $4 per hundredweight, one bull, weighing 950 pounds, sold for $4.30 per hundredweight, four bruised steers, weighing 2,550 pounds, sold for $3 per hundredweight, and 17 steers, weighing 12,810 pounds, sold for $4.50 per hundredweight. I think these cattle sold for their full market value in the condition they were in, and I am satisfied, had they arrived in good shape, they would have sold for at least 15 to 20 cents per hundredweight more, and weighed 30 to 40 pounds per head more."

A. H. Holden, experienced in the sale and shipment of cattle to the St. Louis market, in response to hypothetical questions in the main reciting the evidence of appellee in reference to the delay and rough handling of the shipment, testified that in his opinion, under such circumstances, there would, in addition to the natural shrinkage in weight of the cattle, be a further shrinkage of 50 or 75 pounds per head. J. F. Mulkey also testified they would shrink 50 to 75 pounds. John Dean testified that the shrinkage would be approximately 50 pounds, in addition to the natural loss of weight, and that in such condition the stock would sell for 50 per cent. less per hundredweight than their ordinary market value, and that cattle in the condition as those described in the question ought not to have sold for more than $2 per hundred. Upon fair consideration of the evidence as a whole and based upon the actual weight of the cattle when sold, it seems to us that the evidence fails to support the verdict of the jury. Adding to the price for which the cattle sold the highest sum fixed by any witness for which the cattle would have sold had they reached the market in good condition, and adding to the weight of the cattle the highest estimated loss caused by shrinkage, the verdict is greater than a calculation based thereon will yield. We have added 40 pounds to each head of stock and increased the price 20 cents per hundredweight over what they sold for, and on that basis appellee was entitled to recover $101.34, with 6 per cent. per annum interest thereon from October 3, 1911, and the judgment of the trial court is accordingly reformed, the amount to be apportioned equally between appellants, and, as reformed, the judgment is affirmed.

In view of the reformation of the judgment, as above indicated, and because we consider the testimony sufficient to support the charge of negligence, we find no reversible error in the other assignments presented by appellants.

Reformed and affirmed.